UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUELY ALVES,<br><br>               Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC, *et al.*,<br><br>               Defendants. | Case No. 1:22-cv-11015-LTS |

**DECLARATION**

I, Joe Romney, having been duly sworn, hereby depose and state as follows:

I am above the age of eighteen, I am competent to testify to all matters contained herein, and I am authorized to make this Declaration on behalf of Midland Credit Management, Inc. ("MCM"), Midland Funding, LLC ("Midland"), and Encore Capital Group, Inc. ("Encore").

1. MCM is a servicer for Midland. MCM manages the debt and services accounts owned by Midland. Encore is the parent company of Midland and MCM. Midland and MCM are subsidiaries of Encore. MCM and Encore are affiliated companies to Midland.

2. I am employed as Senior Manager Performance Management for MCM. In that position, I have personal knowledge of MCM's practice, policy, and procedure for the receipt and maintenance of business records, including but not limited to documents related to the purchase of accounts by Midland and the documents that MCM receives in its regular course of business related to servicing of Midland accounts. I am responsible for, among other things, maintaining and overseeing "media," e.g., the loan agreements, debt collection records and other account information pertaining to accounts and debt that MCM manages for Midland, and am familiar with Midland's purchases of accounts and related information. I am familiar with the recordkeeping

1

practices and policies of MCM and Midland and make this Declaration of my own personal knowledge and/or based upon my review of the business records of MCM and Midland maintained in the ordinary course of business, of which I am custodian.

3. The business records of MCM and Midland were made by, or from information transmitted by, a person with knowledge of the events described therein, at or near the time of the event described, and are kept in the ordinary course of the regularly conducted business activity of such person and MCM and Midland, and it is the regular practice of MCM and Midland to make these records as part of its business activity. I am familiar with MCM and Midland's record keeping systems and records, including accounts purchased by Midland and the documents generated at the time of the purchase of accounts.

4. I personally reviewed MCM's file concerning the account of Plaintiff, Suely Alves ("Plaintiff"), which is a Credit One Bank ("Credit One") credit card bearing an account number ending in "6820" (the "Account").

5. Records related to the Account were made at or near the times of occurrence of the matters, and set forth by or from information transmitted by a person having knowledge of the matters reflected in such records and a duty to report such information. These records are kept in the ordinary course of business activity conducted by MCM and Midland and it is the regular practice of MCM and Midland to make these records as part of their business activity.

6. In the course of MCM's regularly conducted business activity, it is the practice of MCM to keep records regarding debtor credit card accounts and activity on such accounts. I am familiar with the operations of MCM and Midland and the receipt and maintenance of business records in relation to accounts, including credit card accounts. Some of the business records I reviewed, including the exhibits attached hereto, were created by other entities. The records of

these entities have been incorporated into the business records of MCM and Midland and are relied upon by MCM and Midland in conducting their business.

7. On or about February 17, 2015, Plaintiff opened the Account with Credit One.

8. The terms and conditions of the Account are set forth in the Visa/Mastercard Cardholder Agreement, Disclosure Statement, and Arbitration Agreement (the "Agreement") that Credit One issued to Plaintiff when the Account was opened. A copy of the Agreement is attached hereto as **Exhibit A**.

9. The Agreement states as follows:

> This Agreement, together with the application you previously signed and the enclosed Arbitration Agreement, governs the use of your VISA® or Mastercard® Account issued by Credit One Bank, N.A.

See Ex. A, p. 2.

10. Moreover, the Agreement states as follows:

> This Arbitration Agreement shall survive: (i) termination or changes in the Card Agreement, the Account and the relationship between you and us concerning the Account; (ii) the bankruptcy of any party, to the extent permitted by applicable bankruptcy law; and (iii) **any transfer or assignment of your Account, or any amounts owed on your Account, to any other person**.

Id. at p. 9 (emphasis added).

11. MCM sent a Plaintiff a letter dated July 30, 2018, to notify her that Credit One sold the Account to Midland and that Midland was now the sole owner of the Account (the "Welcome Letter"). A copy of the Welcome Letter is attached hereto as **Exhibit B**.

12. MCM further indicated that it would be servicing the Account on Midland's behalf. See Ex. B at p. 1.

13. In addition, MCM provided Plaintiff with, among other things, the amount of the unpaid debt, a disclosure that she had 30 days to dispute the validity of the debt, and an assurance that it would provide her with certain information if she submitted a timely dispute. Id. at p. 1-2.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: 8·4·22

_____
Joe Romney
Midland Credit Management, Inc.

4

# EXHIBIT A



D809

| Interest Rates and Interest Charges | |
|---|---|
| ANNUAL PERCENTAGE RATE (APR) for Purchases and Cash Advances | **25.40%**<br>This APR will vary with the market based on the Prime Rate. |
| Paying Interest | We will begin charging interest on Purchases and Cash Advances on the posting date. |
| Minimum Interest Charge | If you are charged interest, the Minimum Interest Charge will be no less than $1.00 for any billing cycle in which an Interest Charge is due. Credit lines less than $400 will not receive a Minimum Interest Charge for the First year. |
| For Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at https:/www.consumerfinance.gov/learnmore. |

| Fees | |
|---|---|
| **Set-up and Maintenance Fees** | Notice: The Annual Membership Fee will be billed to your Account when it is opened and will reduce the amount of your initial available credit. If your Account is established with a $300 credit line, your initial available credit will be $225. If established with a $400 credit line, then $325 initial available credit. If established with a $500 credit line, then $425 initial available credit.<br><br>You may still reject this plan, provided that you have not yet used the Account or paid a fee after receiving a billing statement. If you do reject the plan, you are not responsible for any fees or charges. |
| • Annual Membership Fee | **$75** First year, then **$99** billed monthly at $8.25. |
| • Authorized User Participation Fee | **$19** annually (if applicable). |
| **Transaction Fees**<br>• Cash Advance | Either **$5** or **8%** of the amount of each Cash Advance, whichever is greater. Credit lines less than $400 will not receive a Cash Advance Transaction Fee for the First year. |
| **Penalty Fees**<br>• Late Payment | Up to **$35** |
| • Returned Payment | Up to **$35** |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new Purchases)". See your Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Agreement") for more details.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

**VISA/MASTERCARD CARDHOLDER AGREEMENT,
DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT**

This Agreement, together with the application you previously signed and the enclosed Arbitration Agreement, governs the use of your VISA® or Mastercard® Account issued by Credit One Bank, N.A. (the "Account," "Card" or "Card Account"). The words "you," "your" and "Cardholder(s)" refer to all persons, jointly and severally, authorized to use the Card Account; and "we," "us," "our," and "Credit One Bank" refer to Credit One Bank, N.A., its successors or assigns. By requesting and receiving, signing or using your Card, you agree as follows:

**IMPORTANT NOTICE:** Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement.

**1. CHANGES IN AGREEMENT TERMS:** We can change any term of this Agreement, including the rate of the finance charge or the manner in which the finance charges are calculated, or add new terms to this Agreement, at any time upon such notice to you as is required by law. As permitted by law, any change will apply to your new activity and, in certain circumstances, to your outstanding balance when the change is effective. If you do not wish to be subject to the change, you must notify Credit One Bank by calling our toll-free number at 866-515-5721 or you may write to us at Bank Card Center, P.O. Box 95516, Las Vegas, NV 89193-5516 prior to the effective date of the change, and close your Account.

**2. AUTHORIZED USER:** At your request, we may, at our discretion, issue an additional card in the name of an Authorized User with your credit card account number. If you allow someone to use your Account, that person will be an Authorized User. By designating an Authorized User who is at least fifteen years of age, you understand that: (1) you will be solely responsible for the use of your Account and each card issued on your Account including all charges and transactions made by the Authorized User and any fees resulting from their actions to the extent of the credit limit established for the Account; (2) the Authorized User will have access to certain account information including balance, available credit and payment information. If you provide an Authorized User with any information that enables him/her to access or use your Account, you agree to be liable for the Authorized User's use of that information, and we will have no responsibility or liability for any of the Authorized User's actions; (3) we reserve the right to terminate the Card Account privileges of an Authorized User by closing your Account and issuing you a new account number; (4) the Account may appear on the credit report of the Authorized User. If you advise us that the Authorized User is your spouse, information regarding the Account will be provided to consumer reporting agencies in your name as well as in the name of the Authorized User; (5) the Authorized User can make payments, report the card lost or stolen and remove him or herself from the Account; (6) you can request the removal of the Authorized User from your Account via mail or telephone.
**Authorized User Annual Participation Fee:** An Authorized User Annual Participation Fee of $19.00 will be imposed for issuing a card in the Authorized User's name. This Fee will be assessed annually in the month the Authorized User was added to the Account.

**3. CONFLICTS BETWEEN CARDHOLDERS:** In the event Credit One Bank receives conflicting instructions from one or more of you, or if Credit One Bank has reason to believe there is a dispute between the Cardholders, Credit One Bank may, at its sole discretion, take one or more of the following actions: (1) refuse to act on any conflicting instructions; (2) restrict the Account and deny access to all Cardholders until the dispute is resolved; or (3) terminate the Account. In no event will Credit One Bank be liable for any delay or refusal to honor a request for an advance or any other request with respect to your Account, or for restricting or terminating the Account as provided in this section.

**4. YOUR CREDIT LIMIT:** Your Credit Limit will be established by Credit One Bank and will be disclosed to you when your Card is issued. It also will be shown on each of your billing statements. We reserve the right to modify your Credit Limit from time to time, and if we do so, we will notify you. You agree not to engage in any Card transaction that would cause your outstanding balance to exceed your Credit Limit. Credit One Bank may, but is not obligated to, extend credit to you from your Account if you are already up to your Credit Limit or if the borrowing would take you over your Credit Limit at any time. You must pay us on demand any amount by which your Account's balance exceeds your Credit Limit. If we extend credit over your Credit Limit, we will not be obligated to do so again, and such extension will not result in any waiver of our rights under this paragraph.

**5. USING YOUR CARD:** You and any Authorized User may use your Cards: (1) to make Purchases of goods or services at merchant establishments where the Card is accepted, and (2) to obtain Cash Advances (i.e., loans of money) at participating financial institutions. Each Purchase and Cash Advance obtained will reduce the available credit under your credit limit until it is repaid. Cash Advances are limited to 25% of your assigned credit limit. Cash Advances cannot exceed two transactions or more than $200.00 per day, as applicable. You promise to pay us, when due, the total amount of all Purchases and Cash Advances, as well as all finance charges, and other fees and charges billed to your Card Account. You may not use your Card for any illegal purpose. You further acknowledge that the Card Account will be for personal use and may not be used for business purposes.

**6. AUTHORIZATION:** Merchants or banks may contact us on your behalf to obtain authorization for Card Purchases or Cash Advances. You agree that we shall have no liability if: (a) any merchant or bank refuses to honor any Card issued to access the Account, (b) operational difficulties prevent authorization of a transaction, (c) authorization is declined because your Account is overlimit or delinquent, or (d) credit has been restricted pursuant to any term of this Agreement.

2

**7. YOUR MONTHLY STATEMENT:** Your Account will be on a monthly billing cycle. We will send you a statement each month that there is activity or an outstanding balance on your Account. The statement itemizes your Account activity, including Purchases, Cash Advances, fees, finance charges, other charges, and payments and credits posted during the billing period. The payment coupon portion of the statement will serve as your bill. When making payment, write your Account number on your check or money order and return the coupon with your payment. You should retain the remaining portion of your statement for your records. If the Bank offers, and you elect to receive, your monthly statement electronically, paper statements will not be mailed to you. You will be responsible for making your payments by the due date, either through the Bank's website or telephone, for which a fee may apply, or by mailing your payment to the appropriate address designated for receipt of payments by mail. Credit One Bank will not be responsible for processing delays or failure to process the payment to your Account if a payment sent by mail does not contain your Account number or is not accompanied by your payment coupon. Your payment will be credited to your Account, as of the date of receipt, if the payment is received by 5:00 p.m. Pacific Time ("PT").

**8. ANNUAL MEMBERSHIP FEE:** The Annual Membership Fee for your Account in year one is $75.00 and will be billed to your Account when it is opened. The Annual Membership Fee for your Account beginning in year two is $99.00 and will be billed to your Account in monthly installments of $8.25 per month. The Annual Membership Fee will be billed to your Account as long as it remains open or, if your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. The Annual Membership Fee is refundable as long as you cancel your Account and have not used your card for any Purchases or Cash Advances and you have not made a payment. An Annual Membership Fee Notice, as required by regulation, will be provided to you at least once every 12 months. The Annual Membership Fee is imposed for providing services related to your Account, including but not limited to: the opportunity to use your card with participating merchants, providing renewal cards, providing availability of customer service representatives for assistance, providing credit information to credit reporting agencies, and providing the opportunity for additional credit.

**9. FINANCE CHARGES:** Your Card Account is subject to finance charges and the total Finance Charges in your monthly billing cycle are the sum of the Periodic Finance Charges, Transaction Finance Charges, and Credit Limit Increase Fees which are calculated as follows:
**(a) Periodic Finance Charges:** For Purchases and Cash Advances, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Fees and other fees and charges to your Account, the Periodic Finance Charge is calculated as follows: **The Annual Percentage Rate ("APR")** for Purchases and Cash Advances may vary and will be determined by adding **20.65%** to the U.S. Prime Rate appearing in the "Money Rates" section of any edition of The Wall Street Journal published on the 25th day of each month. If the Journal is not published on that day, then the Prime Rate on the next business day will be used. If the Prime Rate changes, the new rate will take effect on the first day of the following month. The new rate will be applied to all balances on the Account. There is no grace period for Purchases and Cash Advances. The APR for all balances is 4.75% plus 20.65%, currently **25.40%** (corresponding monthly periodic rate of 2.1166%). The **APR** will never be greater than **29.90%** (corresponding monthly periodic rate of 2.4916%). The most recent Annual Percentage Rate was disclosed to you when you received your credit card. There is a **Minimum Interest Charge** if you are charged interest; the Minimum Interest Charge will be no less than **$1.00** for any billing cycle in which an Interest Charge is due. Credit lines less than $400 will not receive a Minimum Interest Charge for the First year. Periodic Finance Charges will be assessed from the date the Purchase, Cash Advance, fee or charge is posted to your Account until the date it is paid in full, and will be calculated by applying the monthly periodic rate to the "average daily balance" of your Account. To get the "average daily balance," we take the beginning balance of your Account each day, add any new Purchases, Cash Advances, fees and charges, and subtract any payments or credits and unpaid Periodic Finance Charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle, and divide the total by the number of days in the billing cycle. This gives us the "average daily balance." Periodic Finance Charges will be assessed on all "average daily balances" until paid in full. All Purchases, Cash Advances, fees or charges accrue finance charges starting on the date of posting, even if the new balance from your previous statement was paid in full or even if that new balance was zero.
**(b) Cash Advance Transaction Finance Charges:** Each time you obtain a new Cash Advance, we will impose a Transaction Fee **Finance Charge** of **$5.00** or **8%** of the amount advanced, whichever is greater. Credit lines less than $400 will not receive a Cash Advance Transaction Fee for the First year.
**(c) Credit Limit Increase Finance Charges:** A fee may be imposed for Credit Limit increases, as described under the "Credit Limit Increase Requests" section of this Agreement.
**(d) Foreign Transaction Finance Charges:** Each time you make a foreign transaction, we may impose a Transaction Fee **Finance Charge** of **3%** of the amount charged or **$1.00**, whichever is greater. For additional information, see the "Foreign Transaction" section of this Agreement.
**(e) Fees Treated as Principal:** For purposes of Finance Charge calculation, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Charges, and other charges, except Cash Advance fees, will be treated like Purchase transactions, posted as principal, and accrue Finance Charges like Purchases.
**(f) Periodic Statement Annual Percentage Rate:** If a finance charge imposed is required to be included in calculating the Annual Percentage Rate under the Federal Truth-in-Lending Act, the Annual Percentage Rate disclosed on your statement may exceed the corresponding Annual Percentage Rate disclosed in this Agreement for any billing period in which such finance charge is posted to your Account.

**10. LATE PAYMENT CHARGES:** If at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and Amount Past Due are not received by 5:00 p.m. PT on the Payment Due Date shown on your statement, a Late Payment Fee of up to $35.00 will be charged to your Account.

**11. OTHER CHARGES:** In addition to the fees and charges described above, other charges that may be imposed on your Account include the following: (1) Returned Payment Fee: If a payment is returned for any reason, a Returned Payment Fee of up to $35.00 will be charged to your Account; (2) Duplicate Statement Fee: If you request a duplicate copy of a monthly statement, you will be charged a fee of up to $10.00 for each statement copy requested; (3) Sales Slip Request Fee: If you request a copy of a sales slip, for any purpose other than to resolve a dispute about the charges on your Account, you will be charged a fee of $6.00 for each sales slip copy requested; and (4) Replacement Card Fee: If you request a replacement card, a Replacement Card Fee of up to $25.00 may be charged to your Account.

**12. MINIMUM PAYMENTS:** (a) You agree to pay either the entire outstanding balance or the Minimum Payment Due, as shown on your monthly statement. The Minimum Payment Due is 5% of your outstanding balance, rounded up to the next whole dollar, or $25.00, whichever is greater, plus any Late Payment Fee for the current billing cycle, and any Past Due Amount. For your Account to be considered current and to avoid a Late Payment Fee, you must pay at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and the Past Due Amount by the Payment Due Date shown on your statement. (b) Certain other service fees may be added to your minimum payment amount. When you sign up for such services, you will be notified if a fee for the service will be imposed and if it is required to be added to your minimum payment.

**13. SMALL BALANCES:** As it is uneconomical for both you and us to process payments or maintain credits that are $1.00 or less in amount, you agree as follows: (1) In any billing cycle in which you have had no transactions and your New Balance on the billing date is $1.00 or less, the balance will be rounded to zero and you will not receive a bill for this amount. (2) In the event that you have a credit balance of $1.00 or less for two consecutive billing cycles, the balance will be rounded to zero and you will not receive a refund of this amount.

**14. MAKING PAYMENTS:** Your payments must be made in US currency only, drawn on a bank domiciled in the US, through paper or electronic format not to include wire transfer or electronic transactions via Credit One Bank's account at the Federal Reserve Bank. Do not send cash through the mail, as Credit One Bank cannot be responsible for cash lost in the mailing process. To the extent that a payment reduces the principal amount outstanding on your Card Account, new credit will be available (subject to your credit limit), but only after 12 calendar days after our receipt of the payment. To insure prompt posting of payments sent through the mail, your payments must be sent to the address indicated on your statement and must be received by 5:00 p.m. PT. There will be a delay in posting payments to your Account for payments not sent to the address shown on your statement. You agree that we may process any item delivered to us for payment on the day it is received, and that we are not required to honor special instructions or restrictive endorsements. As described above, if any payment is received that does not contain your Account number or is not accompanied by your payment coupon, Credit One Bank will not be liable for processing delays or failure to process the payment to your Account. Crediting of such payments may be delayed up to five business days of receipt.
**Treatment of Check Payments:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your bank account or to process the payment as a check transaction. If a check we process in paper form is returned to us by your bank unpaid, we may re-present the returned check electronically.

**15. POSTDATED CHECKS:** You agree that we need not examine any payment check to confirm that it is not postdated, and that we may deposit any postdated check for payment to us on the day we receive it.

**16. IRREGULAR PAYMENTS:** Any payment submitted in offer of settlement of a disputed debt, including any check containing a notation such as "paid in full," must be sent to the following address: Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If you do not forward any check or other payment marked "paid in full" to the above address, we can accept late payments or partial payments, or checks or other payments marked with similar notations, without losing any of our rights under this Agreement, including our right to seek payment of the full balance of your Account.

**17. VERIFICATION OF INFORMATION: (a) Credit Information:** You authorize us to obtain and/or use information about you from third parties and credit reporting agencies to: (1) verify your identity and/or conduct investigative inquiries; (2) determine your income and credit eligibility; (3) review your Account and provide renewal of credit; (4) verify your current credit standing in order to present future credit line increases or decreases; (5) qualify you for and present additional lines of credit or other offers; and (6) collect amounts owing on your Account. California residents, you agree to waive your right to keep confidential information under Section 1808.21 of the California Vehicle Code from us. **(b) Reporting Information:** We may furnish information concerning your Account or credit file to consumer reporting agencies and others who may properly receive that information. However, we are not obligated to release such information to anyone unless we are required to do so by law or a proper Power of Attorney is provided. **(c) Telephone Monitoring:** To be sure that your inquiries are handled properly, courteously and accurately, some of the telephone calls between our employees and our customers are monitored by supervisory or management personnel. Recordings may be made of such calls for your protection.

**18. COMMUNICATIONS: (a)** You are providing express written permission and consent authorizing Credit One Bank or its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at any time, for any lawful purpose. The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text/SMS message or email. Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means. Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account; and providing information

about special products and services. You agree to pay any fee(s) or charge(s) that you may incur for incoming communications from us or outgoing communications to us, to or from any such number or email address, without reimbursement from us. **(b) INDEMNIFICATION:** If you provide telephone number(s) for which you are not the subscriber, you understand that you shall indemnify us for any costs and expenses, including reasonable attorneys' fees, incurred as a result of us contacting or attempting to contact you at the number(s). **(c) COMMUNICATION REVOCATION:** If you do not want to receive communications as described in the previous paragraph, **you must: (i)** provide us with written notice revoking your prior consent, **(ii)** in that written notice, you must include your name, mailing address, and the last four digits of your Account number; **(iii)** advise whether you would like communications to cease via mail, telephone number(s), email, text/SMS, or cease in all forms; **(iv)** if you are requesting communications to cease via telephone number(s) and/or email, please provide the specific phone number(s) and email address; **(v)** you must send this written notice to: Attention – Credit One Bank Customer Service, P.O. Box 98850, Las Vegas, NV 89193-8850. **(d) ONLINE ACCOUNT COMMUNICATIONS:** If you do not want to receive communications previously selected as part of your online account, **you must** update your preferences under the "Email and Text Notifications" section to remove these notifications. We cannot remove these online account notifications for you.

**19. DEFAULT:** You will be in default under this Agreement if any of the following events occur: (1) you exceed your assigned credit limit; (2) you fail to make any required payment when due; (3) you die, become insolvent, file a petition in bankruptcy or similar proceeding, or are adjudged bankrupt; (4) you provide any false or misleading financial or biographical information to Credit One Bank; (5) any representation or warranty you make to Credit One Bank is false or breached; (6) a guardian, conservator, receiver, custodian or trustee is appointed for you; (7) you are generally not paying your debts as they become due; (8) the Bank reasonably believes there has been a material adverse change in your financial condition; or (9) you violate any term of this Agreement. Upon your default, Credit One Bank can close or refuse to renew your Account, demand the return of your card(s), declare your entire balance immediately due and payable, and initiate collection activity, all without prior notice or demand. You promise to pay any collection costs and attorneys' fees, including our in-house attorneys' costs, that Credit One Bank incurs as a result of your default.

**20. TERMINATION OF ACCOUNT:** This Account may be terminated by you at any time by giving notice in writing to Credit One Bank. If your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. Credit One Bank may terminate the Account and demand payment in full if you are in default under any of the terms and conditions of this Agreement, or if there is a dispute between the Cardholders as described elsewhere in this Agreement, or if a Cardholder requests termination of the Account privileges of any other Cardholder, or without cause if Credit One Bank deems termination of the Account to be in its best interests. In the event of voluntary or involuntary Account termination, all credit privileges under the Account and Credit One Bank membership will be terminated immediately. However, when your Account is closed, if there is: (1) a debit balance of $1.00 or less, that balance will be rounded to zero and you will not be required to pay this amount; or (2) a credit balance of $1.00 or less, that balance will be rounded to zero and this amount will not be refunded to you. The rounding to zero may occur after your closing statement cycles, and you may not receive a statement reflecting the rounding.

**21. SECURITY:** This is an unsecured Account, and Credit One Bank retains no security interest in your real or personal property to secure payment of your Card Account.

**22. CARD OWNERSHIP AND ACCEPTANCE:** Any credit card or other credit instrument issued to you remains the property of Credit One Bank and must be surrendered to Credit One Bank or its agent on demand. We are not liable for the refusal of Credit One Bank or any other party to honor your Card for any reason. All Cards have an expiration date. We have the right not to renew your Card for any reason.

**23. FOREIGN TRANSACTIONS:** If you make a transaction at a merchant that settles in a currency other than U.S. dollars, Mastercard Worldwide or Visa Inc. will convert that charge into a U.S. Dollar amount. That conversion will be done at a rate selected by Mastercard or Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Mastercard or Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. The currency conversion rate used on the processing date may differ from the rate that would have been used on the purchase date or on the date the transaction is posted to your Account. You agree to pay the converted amount, including any charges for the conversion that may be imposed as described above. A fee may be imposed for foreign transactions as described under the Finance Charge section of this Agreement.

**24. LOST OR STOLEN CARDS:** You may be liable for unauthorized use of your Card. If your Card is lost or stolen or you suspect that someone is using your Card without your permission, you should immediately notify Credit One Bank's Bank Card Center. You can call (**877) 825-3242**. You can also notify us in writing at **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872**. You will not be liable for any unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft or possible unauthorized use. In any event, your liability for unauthorized use will not exceed $50. If you allow someone to use your Card to make charges to your Card Account, you can terminate this user's authority by retrieving the Card and returning it to us. Until you do, you remain liable for any use by the authorized user. You understand and agree that this Card Account may be replaced with a substitute Account if a credit card for this Account is lost or stolen, or in the event unauthorized use of the Account is reported. All terms and conditions of this Agreement and the application shall apply to any substitute Account.

**25. CREDIT LIMIT INCREASE REQUESTS:** Credit Limit Increase requests must be made in accordance with procedures established from time to time by Credit One Bank. A fee may be imposed for credit limit increases. The fee imposed will be a **Finance Charge** of between **$0.00** and **$49.00**,

5

depending on how long your Account has been established and your credit history with us and others. We will advise you which fee is applicable to your Account at the time you apply for a credit limit increase. Credit limit increase requests are subject to the same credit process as your original application, including review of credit bureau information. You will be notified by mail if your request for an increase is declined. Approval will be indicated in the form of a credit limit increase on your Card Account statement. For information on Credit One Bank's procedure for applying for a credit limit increase, contact us at **(877) 825-3242**.

**26. ACCESS TO CREDIT SCORE:** To access your free monthly Credit Score that is included with your new Account you will need to: (1) Register for Online Account Access at: www.CreditOneBank.com. (2) Accept the online Terms of Use / Credit Score Authorization Agreement associated with receiving your Credit Score. Credit Score availability can take up to 60 days from your online enrollment date. Occasionally, systems or other constraints may prevent your Credit Score from being updated in a timely manner. This service is subject to change or cancellation without notice.

**27. WAIVER OF RIGHTS:** If we waive any of our rights under this Agreement, we will not be obligated to do so again.

**28. CUSTOMER PRIVACY:** The privacy policy for Credit One Bank is provided separately in accordance with applicable law.

**29. GOVERNING LAW:** This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence.

**30. ARBITRATION AGREEMENT:** The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement.

<u>CREDIT ONE CASH BACK REWARDS PROGRAM ("PROGRAM")</u>

This Credit One Cash Back Rewards Program (the "Program") supplements the Cardholder Agreement, Disclosure Statement and Arbitration Agreement (collectively, the "Cardholder Agreement") you received with your credit card account issued by Credit One Bank, N.A. (the "Account"). In this Program, the words "we," "us," "our" and "Credit One" refer to Credit One Bank, N.A. and the words "you" and "your" refer to all persons, jointly and severally, authorized to use the Account and thereby participate in the Program. By using your Account, you agree to participate in the Program and to the terms and conditions regarding the Program contained herein. In the event of any conflict between the Cardholder Agreement and this Program with respect to matters relating to the Program, this Program shall control.

**EARNING CASH BACK REWARDS:** You will receive cash back in the form of an automatic statement credit equal to 1% on "eligible net Purchases" (as defined below) made with your Account. You will not earn rewards on Cash Advances and Fees. We will post a statement credit to your Account within seven days of the end of the month equal to 1% of "eligible net Purchases" made with your Account from the 27th of the previous month to the 26th of the current month. If your Account is in default, as defined within your Cardholder Agreement at the time the credit is to be posted, you WILL NOT receive the credit. The eligible credit(s) will show on your billing statement as "Credit One Rewards Credit."

**ELIGIBLE NET PURCHASES:** Eligible net Purchases are Purchases from merchants using select Standard Industrial Classification Codes ("SIC Codes"). For gasoline Purchases, SIC Codes 5172, 5541, and 5542 are eligible. For grocery Purchases, SIC Codes 5411, 5422, and 5499 are eligible. For dining Purchases, SIC Codes 5812, 5813, and 5814 are eligible. For mobile phone service, SIC Codes 4812 and 4814 are eligible. For internet, cable and satellite TV service, SIC Code 4899 is eligible. You will earn rewards for Purchases with the above mentioned SIC Codes minus any returns or other credits using those same SIC Codes. Although a merchant or the items that it sells may appear to fit the reward categories, the merchant may not have or use a SIC Code that is included in this Program, and Purchases with that merchant will not qualify for rewards. You WILL NOT earn rewards if a merchant does not submit the Purchase using a SIC Code that has been designated for rewards. A merchant with more than one location may submit Purchases using different SIC Codes, including SIC Codes that do not qualify under this Program. This means that Purchases from the same merchant at a different location may result in no reward. Purchases from the following types of merchants are not eligible for rewards: oil, propane, home heating companies, PayPal, warehouse clubs (including but not limited to Sam's Club and Costco), and discount supercenters (including but not limited to Wal-Mart and Target).

**PROGRAM RESTRICTIONS:** You will receive an automatic rewards credit on each statement that has at least one eligible net Purchase. Automatic statement credits for rewards will reduce the balance on your Account but will not count as payments. You will still be required to pay at least the Minimum Payment Due as shown on your billing statement each month. You WILL NOT earn rewards for Purchases made while your Account is in default as defined within your Cardholder Agreement. Disputed or unauthorized Purchases/fraudulent transactions and illegal transactions do not earn rewards, unless otherwise specified. This Program excludes Accounts already enrolled in a different Credit One rewards program.

**AMENDMENTS:** The Program may be amended (added to, modified or deleted) by us at any time, including without limitation amendments of eligible SIC Codes without prior notice and will take effect immediately. The current version of this Program may be found at www.CreditOneBank.com in the Cardholder Agreement section. Any revisions may affect your ability to earn rewards.

**TERMINATION:** We may suspend or terminate the Program or your participation in the Program at any time without prior notice. In such event, we will evaluate your Account for any eligible rewards as of the Program termination date. Provided that you meet all of the other Program Restrictions listed above at that time, you will receive a distribution of the rewards earned during the current billing period in the form of a statement credit.

**LIMITED LIABILITY:** Unless otherwise required by law, this Program, or our Cardholder Agreement with you, we will not be liable to you or anyone making a claim on your behalf, in connection with: (1) any change or termination of the Program; (2) any loss, damage, expense or inconvenience caused by any occurrence outside of our control; (3) any taxes that you incur as a result of receiving rewards, payment of which taxes will be your responsibility; (4) any merchandise or services you purchase, or for any direct, indirect or consequential damages with respect to the use of your

Account. In any event, any liability that Credit One may have to you in connection with the Program shall be limited to the amount of any rewards you have earned in this Program. The Program and rewards are void or limited where prohibited or restricted, respectively, by federal, state or local law.

<u>YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE</u>

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

**What To Do If You Find a Mistake on Your Statement**
If you think there is an error on your statement, write to us at: **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872**.
In your letter, give us the following information:
- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us at **877-825-3242**, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
- *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us. If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase. If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at: **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872**.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

<u>ARBITRATION AGREEMENT</u>

**PLEASE READ THIS ARBITRATION AGREEMENT OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY.**

ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.

*Agreement to Arbitrate:*
You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing the Card Agreement.

*Claims Covered:*
- Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your Account; any disclosures or other documents or communications relating to your Account; any transactions or attempted transactions involving your Account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your Account; services or benefits programs relating to your Account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your Account, goods or services financed under your Account, or the terms of financing; the application, enforceability or interpretation of the Card Agreement (except for this Arbitration Agreement); and any other matters relating to your Account, a prior related Account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this Arbitration Agreement in the broadest way the law will allow it to be enforced.
- Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your Account, your agent, representative or heirs, or a trustee in bankruptcy. Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made, and Claims brought against any other person or entity named as a defendant or respondent in a Claim brought by you against us.
- Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.
- Claims subject to arbitration include Claims that arose in the past, or arise in the present or future. Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others. Claims subject to arbitration include Claims that are made as counterclaims (including but not limited to counterclaims by us to collect amounts in default from you), cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties.
- As set forth below, Claims made as part of a class action, private attorney general action or other representative action are subject to arbitration but must be arbitrated on an individual basis. If a Claim is arbitrated, neither you nor we will have the right to participate in a class action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member. Thus, if you or we require arbitration of a particular Claim, neither you nor we may pursue the Claim in any court litigation, whether as a class action, private attorney general action, other representative action or otherwise, and the arbitration of such Claim must proceed on an individual basis.

*Claims Not Covered:*
- Claims are not subject to arbitration if they are filed by you or us in a small claims court or your state's equivalent court, so long as the matter remains in such court and advances only an individual claim for relief. Also, disputes about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof are not subject to arbitration and are for a court to decide. But disputes about the application, enforceability or interpretation of the Card Agreement as a whole are subject to arbitration and are for the arbitrator to decide.

*Initiation of Arbitration:* The party filing arbitration must choose an arbitration administrator. Arbitration administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing arbitration. If you initiate the arbitration, you must also notify us in writing at Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your Account is closed) the last address we have on file for you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of the arbitration administrator, and other related materials, including forms and instructions for initiating arbitration, by contacting the arbitration administrator as follows:

**American Arbitration Association ("AAA")**
1-800-778-7879
Web Site: www.adr.org

If AAA is unwilling or unable to serve, and you and we are unable to agree on a substitute, a court with jurisdiction will select the administrator or arbitrator.

*Procedures and Law Applicable in Arbitration:* A single arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator and will be neutral. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this Arbitration Agreement is inconsistent with those procedures and rules, in which case this Arbitration Agreement will prevail. This Arbitration Agreement will also prevail to the extent that it is inconsistent with the Card Agreement. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law, consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. You and we agree to keep the details of the arbitration, including communications in any medium, testimony, documents and the award, confidential unless otherwise required by applicable law or the administrator's rules. The arbitrator will have the power to award to a party any damages or other relief provided for an individual claim under applicable law (including constitutional limits that would apply in court), and will not have the power to award relief to, against, or for the benefit of, any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

*Costs:* If we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay your share of the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for your share of the initial filing fee if you paid it and you prevail. Except as set forth below, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that (a) the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party, (b) the arbitrator shall require you to pay us collection costs and attorneys' fees, including our in-house attorneys' costs, that we incur as a result of your default, as set forth in the Card Agreement and (c) the arbitrator may assess attorneys' fees and costs against a party upon a showing by the other party that the first party's claim(s) or conduct was frivolous or pursued in bad faith or solely for purpose of multiplying the arbitration proceedings unreasonably or vexatiously.

*No Class Arbitration or Consolidation or Joinder of Parties:* All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this Arbitration Agreement or the Card Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration. No arbitrator shall have the authority to conduct any arbitration in violation of this Arbitration Agreement or to issue any relief that applies to any person or entity other than you or us individually. Unless consented to by all parties to the arbitration, Claims of two or more persons may not be joined, consolidated or otherwise brought together in the same arbitration (unless those persons are applicants, co-applicants or authorized users on a single Account and/or related Accounts or parties to a single transaction or related transactions); this is so whether or not the Claims (or any interest in the Claims) may have been assigned. Provided, however, that nothing in this Arbitration Agreement regarding consolidation and joinder is intended to impair a respondent's right to assert a counterclaim against the claimant pursuant to the administrator's rules.

*Enforcement, Finality:* You or we may bring an action, including a summary or expedited motion, to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. We will not amend this Arbitration Agreement in a manner that adversely affects your rights without giving you prior notice.

An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction and shall be subject to judicial review only as provided in the FAA. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, nor on the resolution of any other dispute or controversy.

*Severability, Survival:* This Arbitration Agreement shall survive: (i) termination or changes in the Card Agreement, the Account and the relationship between you and us concerning the Account; (ii) the bankruptcy of any party, to the extent permitted by applicable bankruptcy law; and (iii) any transfer or assignment of your Account, or any amounts owed on your Account, to any other person. If any part of this Arbitration Agreement other than the section titled "*No Class Arbitration or Consolidation or Joinder of Parties*" is declared unenforceable, the remainder shall be enforceable. If the section titled "*No Class Arbitration or Consolidation or Joinder of Parties*" is declared unenforceable in a proceeding between you and us, without impairing the right to appeal such decision, this entire Arbitration Agreement (except for this sentence) shall be null and void in such proceeding.

© 2018 Credit One Bank, N.A. All rights reserved.
Credit One®, Credit One Bank®, and corresponding logos are federally registered trademarks.   C50-00952   **D809 / M-124508**

# EXHIBIT B

# Welcome. *Your account has a new home.*

**mcm** Midland Credit Management, Inc.
2365 Northside Drive, Suite 300
San Diego, CA 92108

08-27-2018

Suely Alves
42 Webster Ave
Woburn, MA  01801-1553

P12T134 010

| Account Transfer Details | |
|---|---|
| Original Creditor | Credit One Bank, N.A. |
| Original Account Number | ■■■■■■■■6820 |
| Current Servicer | Midland Credit Management, Inc. |
| MCM Account Number | ■■■■4066 |
| Current Owner | Midland Funding LLC |
| Current Balance | $1,054.16 |

**Flexible Payment Options Available**
**(877) 382-5930**

---

### Account at a Glance

**Current Balance**
**$1,054.16**

**Flexible Payment Options Available**

**Receive Personalized Service**

**Reply by**
**10-11-2018**
**Call (877) 382-5930**
Sun-Th: 5am-9pm PT;
Fri-Sat: 5am-4:30pm PT;

**MCMPay.com**

---

RE Credit One Bank, N.A.

Dear Suely,

Welcome! On 07-30-2018, your Credit One Bank, N.A. account was sold to Midland Funding LLC, which is now the sole owner of this debt.  Midland Credit Management, Inc. ("MCM"), a debt collection company, will be collecting on, and servicing your account, on behalf of Midland Funding LLC.

To welcome you to MCM, we'd like to offer you an opportunity to discuss flexible payment options to resolve this account.

MCM is a different kind of debt collector. Here is what to expect:
– A dedicated Account Manager will be assigned to your account
– We will reach out to you by phone and mail over the months to come.
– Useful tools and resources online at MCMPay.com

MCM, a partner you can trust.

We value your experience and understand that managing debt can be a difficult process!  That is why we set standards for how you are to be treated while working with us. Visit MCMPay.com to learn about our Consumer Bill of Rights or call (877) 382-5930 to experience the difference for yourself.

Sincerely,

*Tim Bolin*

Tim Bolin, Division Manager

P.S. Any discounts or repayment options do not alter your validation rights as described on the reverse side.



CONSUMER BILL OF RIGHTS REV. 1103021

We are not obligated to renew any offers provided.

 **(877) 382-5930**      **MCMPay.com**      Midland Credit Management, Inc
P.O. Box 51319
Los Angeles, CA 90051-5619

**PLEASE SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION**

---

MCM Account Number ■■■■4066
Current Balance $1,054.16

Total Enclosed  $ _____ . ____

Mail Payments to:
Midland Credit Management, Inc
P.O. Box 51319
Los Angeles, CA 90051-5619

 **Manage Your Account Online**
MCMPay.com

**Important Payment Information**

**Make checks payable to:**
Midland Credit Management
Enter your MCM Account # on all payments

**(877) 382-5930**

se habla español
(855) 983-6352

V006

## Important Disclosure Information.

**Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

**Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.**

| Calls to and/or from this company may be monitored or recorded. | | | |
|---|---|---|---|
| **Basic Information** | | | |
| Original Creditor | Credit One Bank, N.A. | Current Creditor | Midland Funding LLC |
| Original Account Number | ▮▮▮▮▮▮▮▮6820 | Current Servicer | Midland Credit Management, Inc. |
| Charge-Off Date | 06-24-2018 | MCM Account Number | ▮▮▮▮4066 |
| **Important Contact Information** | | | |
| Send Payments to:<br>Midland Credit Management, Inc<br>P.O. Box 51319<br>Los Angeles, CA 90051-5619 | Send disputes or an instrument tendered as full satisfaction of a debt to:<br>Attn: Consumer Support Services<br>2365 Northside Drive Suite 300<br>San Diego, CA 92108<br>You may also call: (877) 382-5930 | | Physical Payments for Colorado Residents:<br>80 Garden Center<br>Suite 3<br>Broomfield, CO 80020<br>Phone (303) 920-4763 |

The records associated with the Credit One Bank, N.A. account purchased by Midland Funding LLC, reflect that you are obligated on this account, which is in default. As the owner of this account, but subject to the rights described below, Midland Funding LLC is entitled to payment of this account. All communication regarding this account should be addressed to MCM and not the previous owner.

If an attorney represents you with regard to this debt, please refer this letter to your attorney. Likewise, if you are involved in an active bankruptcy case, or if this debt has been discharged in a bankruptcy case, please refer this letter to your bankruptcy attorney so that we may be notified.

Please remember, even if you make a payment within thirty (30) days after receiving this notice, you still have the remainder of the thirty (30) days to exercise the rights described above.

If your payment method is a credit or debit card, it may be processed through our international card processor. Although our policy is to not charge consumers fees based upon their payment method, your card issuer may elect to do so due to the location of the card processor. If an international transaction fee has been charged by your card issuer, that fee is eligible for reimbursement. You may contact your Account Manager to modify your payment method to avoid these charges in the future and for information to initiate your reimbursement.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**We are required under state law to notify consumers of the following additional rights. This list does not contain a complete list of the rights consumers have under applicable law:**

**NMLS ID: 934164**

**IF YOU LIVE IN CALIFORNIA, THIS APPLIES TO YOU:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or http://www.ftc.gov.

Nonprofit credit counseling services may be available in the area.

**IF YOU LIVE IN COLORADO, THIS APPLIES TO YOU:** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

**IF YOU LIVE IN MASSACHUSETTS, THIS APPLIES TO YOU: NOTICE OF IMPORTANT RIGHTS:** You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to MCM.

**IF YOU LIVE IN MINNESOTA, THIS APPLIES TO YOU:** This collection agency is licensed by the Minnesota Department of Commerce.

**IF YOU LIVE IN NEW YORK CITY, THIS APPLIES TO YOU:** New York City Department of Consumer Affairs License Number 1140603, 1207829, 1207820, 1227728, 2022587, 2023151, 2023152, 2027429, 2027430, 2027431

**IF YOU LIVE IN NORTH CAROLINA, THIS APPLIES TO YOU:** North Carolina Department of Insurance Permit #101659, #4182, #4250, and #3777, #111895, and #112039. Midland Credit Management, Inc. 2365 Northside Drive, Suite 300, San Diego, CA 92108

**IF YOU LIVE IN TENNESSEE, THIS APPLIES TO YOU:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

VALA